**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacinto Johnny Aguirre,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>　　　　　Defendant. | No. CV-16-01409-PHX-JZB<br><br>**ORDER** |

Plaintiff Jacinto Johnny Aguirre seeks review of the Social Security Administration Commissioner's decision denying his social security benefits under the Social Security Act. (Doc. 1; Doc. 12.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further proceedings consistent with this Order.

**I. Background**

On October 11, 2012, Plaintiff filed an application for disability and disability insurance benefits. (AR[1] 253-68.) Plaintiff alleged an amended disability onset date of July 1, 2010.[2] (*Id*.) Plaintiff's applications were initially denied on February 4, 2013, and upon reconsideration on July 8, 2013. (*Id.* at 196-99, 202-08.) On July 16, 2013 Plaintiff

---

[1] Citations to "AR" are to the Administrative Record.

[2] Plaintiff's initial alleged disability onset date was January 9, 2009. (AR 253.) Plaintiff had a previous hearing on January 9, 2012 (*id*. at 57-111), and his case was dismissed on February 23, 2012. (*Id*. at 112.) Plaintiff did not appeal the decision. Plaintiff alleges he "could have adjusted to other work until the exacerbation of his back pain in 2010." (*Id* at 357.)

filed a written request for hearing. (*Id.* at 209-10.) Subsequently, Plaintiff's application was set for a video hearing, which was held on June 19, 2014. (*Id.* at 36.) In a decision dated August 4, 2014, Administrative Law Judge (ALJ) Laura Speck Havens denied Plaintiff's application for benefits. (*Id.* at 20-27.) On August 29, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1-6.)

On May 6, 2016, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint with this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On September 13, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 12.) On October 13, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 13.) On October 27, 2016, Plaintiff filed a Reply Brief. (Doc. 14.)

**II.  Standard of Review**

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**III.    The ALJ's Five-Step Evaluation Process**

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded,

ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Here, the ALJ concluded that Plaintiff was not "disabled," as the term is defined in 42 U.S.C. §§ 416, 423. (AR 26.) In following the five-step sequential evaluation process used for determining whether an individual is disabled, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ concluded at step one that Plaintiff "has not engaged in substantial gainful activity since July 1, 2010, the amended onset date." (*Id.* at 20.) At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, obesity, hypertension, asthma, and arthritis." (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.)." (*Id.* at 22.) At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that Plaintiff:

> is able to sit for 6 hours out of an 8-hour work day, stand for 2 hours out of an 8-hour work day, and walk for 2 hours out of an 8-hour work day; [Plaintiff] requires a cane for ambulation; [Plaintiff] is able to occasionally lift and carry 10 lbs., and frequently lift and carry 10 lbs.; [Plaintiff] can occasionally climb stairs, balance, stoop but never climb ladders, kneel, crouch, or crawl; and [Plaintiff] is able to work in environments without concentrated exposure to height, involving machinery, dust, fumes, smoke, temperature extreme, and vibrations.

(*Id.*)

The ALJ further determined that Plaintiff is unable to perform any of his past relevant work. (*Id.* at 25.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform"

considering Plaintiff's "age, education, work experience, and residual functional capacity." (*Id.* at 26.) The ALJ found that Plaintiff could perform the requirements of representative occupations such as an information clerk and an order clerk. (*Id.*) Given that finding, the ALJ concluded that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.* at 27.)

**IV. Analysis**

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence and for failing to consider Plaintiff's knee condition as a severe medical impairment. The Court addresses these arguments below.

### a. Medical Opinion Evidence

#### i. Legal Standards

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."

*Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original) (citations omitted).

Here, the opinions of Plaintiff's treating physician, Dr. Hermenau, are contradicted by the opinions of the state agency physician, Dr. Combs. Therefore, the ALJ was required to give specific and legitimate reasons supported by substantial evidence for giving Dr. Hermenau's opinions reduced weight.

### ii. The ALJ failed to provide specific and legitimate reasons for rejecting Dr. Hermenau's opinions.

Plaintiff argues that the ALJ failed to provide specific, legitimate reasons for rejecting the opinion of his treating physician, Dr. Hermenau. As detailed below, the Court agrees.

On January 14, 2013, Dr. Hermenau completed a Medical Source Statement. (AR 797-99.) Dr. Hermenau opined that Plaintiff could carry or lift up to 10 pounds "occasionally," which is defined on the Statement as one-third of the day. (*Id.* at 797.) Dr. Hermenau limited Plaintiff to sitting, standing, or walking for one hour each in an eight-hour work day. (*Id.* at 798.) Dr. Hermenau further opined Plaintiff could sit for a total of three hours in an eight-hour work day, and could stand or walk for a total of two hours each in an eight-hour work day. (*Id.*) Dr. Hermenau also opined Plaintiff could use his left and right hands "occasionally" for the following work-related activities: simple grasp, reaching overhead, reaching all other, fingering (fine motor), handling (gross motor), and push/pull. (*Id.* at 798-99.) Finally, Dr. Hermenau opined Plaintiff could never climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or bend at the waist. (*Id.* at 799.) Dr. Hermenau was of the opinion that Plaintiff would likely be absent from full-time employment more than four times a month. (*Id.*)

After summarizing a portion of the administrative record, the ALJ gave little weight to Dr. Hermenau's Medical Source Statement, because "the opinion relies heavily

on the subjective report of symptoms and limitations provided by [Plaintiff], and the totality of the evidence does not support the opinion." The ALJ further opines that if the limitations Dr. Hermenau opined were imposed, Plaintiff "would be bedbound rather than…being more active and back to school." (*Id*. at 24.) The ALJ also found that Dr. Hermenau's opinion that Plaintiff would miss work more than four times a month was "not supported by the objective medical evidence and the totality of the evidence." (*Id*.) Instead, the ALJ gave substantial weight to the opinion provided by the non-treating and non-examining state agency physician, Dr. Combs, because "his opinion is consistent with the totality of the evidence and supported by the objective medical evidence." (*Id*. at 25.)

The Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving Dr. Hermenau's Medical Source Statement reduced weight. First, the ALJ found that Dr. Hermenau's opinions relied heavily on Plaintiff's subjective report of symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinions if it is based to a large extent on a claimant's self-reports that have been properly discounted.").[3] The ALJ stated that Dr. Hermenau's opinions would render Plaintiff "bedbound," instead of more active and back to school, as Dr. Hermenau noted in an April 15, 2013 report. (*Id*. at 844.). Defendant concedes it does not rely on the ALJ's reasoning that Dr. Hermenau's opinions would render Plaintiff "bedbound." Defendant instead argues it was "reasonable for the ALJ to conclude that Dr. Hermenau's opinion appeared to rely heavily on Plaintiff's less than fully credible subjective report." (Doc. 13-6.) The Court disagrees. On Dr. Hermenau's Medical Source Statement, he indicated objective medical findings supported his assessment, which included Plaintiff's limited range of motion, imaging of lumbar disc degeneration, spondylosis, and medication therapy. (*Id*. at 797-99.) Additionally, the ALJ must do more than make a "reasonable conclusion" in order to

---

[3] The ALJ found that Plaintiff's symptom testimony was not entirely credible (*id*. at 24), and Plaintiff did not challenge this adverse credibility determination.

- 7 -

reject a treating physician's opinions; the ALJ must provide specific and legitimate reasons supported by substantial evidence.

The Court also notes that Plaintiff's attendance of school is not necessarily inconsistent with Dr. Hermenau's Medical Source Statement, nor does it indicate Dr. Hermenau relied on Plaintiff's self-reports in his Medical Source Statement. Plaintiff previously testified that he attended school online. (AR 74-75.) Although Plaintiff was required to take one class on-campus, this class was only once a week for an hour. (*Id.*) Plaintiff stated he was given a chair "with a lot of cushion and arch support in the back" while going to school (*id.* at 49), and that he parked no farther than 50 yards from his classroom. (*Id.* at 75.) Further, in the same treatment record, Dr. Hermenau states that Plaintiff "has had some persistent back pain and some 'giving out' of his legs," and that "he is walking with a walker." (*Id.* at 844.) Moreover, the ALJ is to consider the entirety of Plaintiff's medical record, and a single sentence from one treatment record is not "substantial evidence" to reject Dr. Hermenau' opinion. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Finally, the ALJ found that Dr. Hermenau's opinion that Plaintiff would miss work more than four times a month was not supported by objective medical evidence. However, the ALJ does not explain what this objective evidence is and why it does not support Dr. Hermenau's opinion. Although the ALJ summarized a portion of the administrative record in support of her RFC determination, this is not the same as providing clear and convincing reasons. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ failed to identify specifically which of the evidence she summarized does not support Dr. Hermenau's opinion. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 ("[W]e cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

The Court finds that the ALJ committed harmful legal error by failing to provide specific and legitimate reasons supported by substantial evidence for giving Dr. Hermenau's opinions reduced weight.

### b. Plaintiff's Right Knee Impairment
#### i. Legal Standards

At step two of the five-step analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To find the claimant's impairment severe, the impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include: physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)-(6). An impairment is "not severe" only if the evidence establishes a slight abnormality with minimal effect on the individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

Importantly, the inquiry "is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28 (internal quotations omitted). "'[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* Further, the ALJ "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1273 (citing SSR 88-13). Thus, the Court's task in reviewing a non-severe finding at step two is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of

impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

When determining a claimant's RFC, the ALJ must consider all medically determinable impairments. *See* 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Additionally, the ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).

### ii. The ALJ erred by failing to evaluate Plaintiff's knee impairment.

Plaintiff argues that the ALJ erred by failing to fully evaluate Plaintiff's knee condition. Plaintiff asserts that the ALJ failed to include Plaintiff's knee condition in the identified list of severe impairments at Step Two of her analysis, and so it is presumable that the ALJ found the condition to be non-severe. However, there is no discussion in the ALJ's decision regarding why the knee condition is not considered to be a severe medical impairment, and it is unclear whether the ALJ considered this impairment in her decision. Thus, Plaintiff contends, the ALJ committed harmful legal error. As detailed below, the Court agrees.

The ALJ identified the following to be Plaintiff's severe impairments: degenerative disc disease, obesity, hypertension, asthma, and arthritis. (AR 20.) But, the ALJ failed to include Plaintiff's knee impairment for which there are medical records (*id*. at 899-904; 945-69), and for which Plaintiff testified about during his hearing. (*Id*. at 37, 47-48.) The ALJ also did not indicate or explain if she had found Plaintiff's knee impairment to be non-severe. The Court finds that the ALJ erred by failing to consider the medical severity of Plaintiff's impairment, as required by 20 C.F.R. § 404.1520(a)(4)(ii).

Additionally, even if the ALJ had found Plaintiff's knee impairment to be non-severe, all medical impairments must be considered in determining Plaintiff's RFC, and

the RFC must be based on all relevant medical evidence. 20 C.F.R. § 404.1545. The ALJ only discussed one medical record pertaining to Plaintiff's knee injury. The ALJ cited to this single record in order to find Plaintiff's symptom testimony to be incredible, and did not otherwise account for the knee impairment in evaluating Plaintiff's RFC. The ALJ states Dr. Clark, Plaintiff's knee surgeon, noted Plaintiff showed "some marked discomfort with gentle patellofemoral compression" although Plaintiff was able to ambulate "and there has been no contact with his knee." (AR 958.) Dr. Clark was also of the opinion that Plaintiff's knee pain was likely secondary to overuse. (*Id.*) But, the ALJ fails to discuss Plaintiff's arthroscopy or any additional records from Dr. Clark regarding Plaintiff's knee impairment.

Beginning March 29, 2013, Plaintiff was evaluated by Dr. Clark for right knee pain after frequent falls. (AR 901.) A physical exam by Dr. Clark on April 15, 2013 revealed a "medial collateral ligament sprain." (*Id.* at 900.) On September 9, 2013, Dr. Clark performed arthroscopic surgery on Plaintiff's right knee to repair a torn medial meniscus. (*Id.* at 950.) After Plaintiff reported continuing pain and frequent falls, an MRI was conducted on May 20, 2014 on Plaintiff's right knee. (*Id.* at 1049-50.) The MRI revealed a "new vertical tear versus postsurgical change in the body of the medial meniscus" and "small joint effusion." (*Id.*) After evaluating the MRI, Dr. Clark noted it showed "abnormal signal in the location of [Plaintiff's] previous surgery," and stated that "there is really no way of identifying in advance whether there is any tissue that can be resected and could potentially relieve [Plaintiff's] pain." (*Id.* at 1047.) At the hearing, Plaintiff identified his back and knee pain to be the two areas where he feels the most pain. (*Id.* at 47.) Given Plaintiff's history of reported right knee pain and arthroscopic surgery, the Court finds that the ALJ erred by failing to fully discuss this impairment in her RFC determination, as required by 20 C.F.R. § 404.1545.

Defendant argues that even assuming the ALJ did err, any error was harmless to Plaintiff. (Doc. 13-9.) *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). An ALJ's error is

harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. The Court disagrees with Defendant and cannot be certain that the ALJ's RFC "amply accommodated any knee problem" (Doc. 13-9), or that the ALJ's RFC and disability determinations would have been different had the ALJ adequately considered Plaintiff's knee impairment and the above-mentioned medical records. Thus, the Court finds that the ALJ's error was not harmless. *See also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (finding the ALJ committed harmful legal error because all of the plaintiff's relevant limitations and impairments were not included in the ALJ's RFC determination).

The Court finds that the ALJ committed harmful legal error by failing to discuss whether she found Plaintiff's knee impairment to be non-severe and by failing to fully consider Plaintiff's knee impairment in her RFC determination.

### V. Remand for further proceedings is appropriate here.

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen*, 80 F.3d at 1292.

In order to determine when it is appropriate to remand for benefits versus further administrative proceedings, the Ninth Circuit has established a three-part test. First, a court must determine whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Treichler,* 775 F.3d at 1101. Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id.* Third, if the court "concludes that no outstanding issues remain and further proceedings would not be useful, [the court] may…find[] relevant testimony credible as a matter of law" and remand for benefits." *Id.* "When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to

the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted).

The Court has considered the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. The Court finds that remand for further proceedings is appropriate here. Although the Court finds that the ALJ erred, the Court also finds that there is serious doubt as to whether Plaintiff is disabled. *See Garrison*, 759 F.3d at 1021. Specifically, the Court notes Dr. Clark stating on February 19, 2014 that Plaintiff "is working out at the YMCA three times a week and has been involved in a progressive cycling program." (AR 958.) Plaintiff testified at the hearing and wrote in a Function Report that he attends church, his daughter's soccer games, and the movies each week. (*Id*. at 45, 307.) In a March 11, 2014 report, Dr. Clark stated: "Unfortunately, the reliability of [Plaintiff's] family is questioned because [Plaintiff's] facial grimacing and audible grunting which suggest symptom magnification. The knee did demonstrate no discoloration, no significant swelling, and no edema in the foot or ankle." (*Id*. at 956.) Additionally, Dr. Hermenau stated on January 14, 2011 that Plaintiff "is noted to have back pain with symptoms and signs of non-organic pathology that appears to be disproportionate from imaging studies." A brain MRI conducted on April 26, 2011, revealed normal results. (*Id*. at 387.) An EEG conducted on June 17, 2011 was "within normal limits" and "no clear epileptiform activity was seen." Additionally, Plaintiff had a second arthroscopic surgery on July 14, 2014, which took place after Plaintiff's hearing. (*Id*. at 1055.) The Court is not sure what effect Plaintiff's second arthroscopic surgery had on his knee pain and instability.

The case is therefore remanded for further proceedings. On remand, the ALJ must reevaluate Dr. Hermenau's opinions and consider Plaintiff's knee impairment in assessing his RFC.

Accordingly,

**IT IS ORDERED** that the Commissioners' decision is vacated and this matter is remanded to the Commissioner for further administrative proceedings consistent with this

Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 4th day of August, 2017.

_____
Honorable John Z. Boyle
United States Magistrate Judge